# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RACHEL BENDER, and
     Plaintiff,

v.

MICHAEL D. SHEA, and the
GRAND TRAVERSE COUNTY, MI,
     Defendants.

Case No.:    25-cv-40

Hon.:

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D.
CONKLIN, PLC
Attorneys for the Plaintiff
4084 Okemos Road, Ste B.,
Okemos, MI 48823
Phone: (517) 332-3390
Fax: (517) 853-0434
collin@caseydconklin.com

## COMPLAINT and JURY DEMAND

1

## PARTIES and JURISDICTION

1.    Plaintiff RACHEL BENDER ("Plaintiff") is a United States Citizen and a permanent resident of Benzie County, Michigan which is within the geographical bounds of the United States District Court for the Western District of Michigan's Southern Division.

2.    Defendant MICHAEL D. SHEA is, and throughout the events described in this Complaint was, the Sheriff for Defendant GRAND TRAVERSE COUNTY. He therefore has a regular place of business within the geographical bounds of the Western District. He is sued in his individual and official capacities.

3.    Defendant GRAND TRAVERSE COUNTY is a State of Michigan municipality located within the geographical bounds of the Southern Division of the United States District Court for the Western District of Michigan.

4.    Plaintiff was formerly employed as a Corrections Officer for Defendant GRAND TRAVERSE COUNTY and under the control and direction of Defendant SHEA. This claim seeks to remedy discrimination she suffered while employed, as well as wrongful termination in retaliation for opposing same.

5.    Defendant SHEA, as the Sheriff of GRAND TRAVERSE COUNTY, is a constitutional officer. *Vine v. Cnty. of Ingham*, 884 F.Supp. 1153, 1158 (WD MI 1995). Mich. Const. art. 7, § 4. The "sheriff's department" does not exist as a separate legal entity; it is simply an agent of the county. *Higgins v. Van Buren Cnty.,* No. 19-cv-554 at *7 (WD MI Nov. 1, 2019). Defendant GRAND TRAVERSE COUNTY pays the salaries of deputies and corrections officers under the supervision and control of the Sheriff, including Plaintiff, at least in part through the County's general funds. And, Grand Traverse County Corrections Officers are subject to County employment policies and are overseen by the County's Human Resources Department. The Defendants GRAND TRAVERSE COUNTY and the SHERIFF OF GRAND TRAVERSE

2

COUNTY are both signatories to the Collective Bargaining Agreement with the Policeman's Labor Counsel that governed Plaintiff's employment, and both entities were listed jointly as the "employer" throughout. For this reason, Defendants SHEA and GRAND TRAVERSE COUNTY are joint employers, jointly and severally liable for the employment discrimination which Plaintiff suffered during her term as a Grand Traverse County Corrections Officer. *See eg Swallows v. Barnes and Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997) (joint employer doctrine).

6.     The Court may exercise general *in personem* jurisdiction over the Defendants because of their permanent presence within the geographical bounds of the Court. In the alternative, the Court may exercise specific jurisdiction over the dispute because the events giving rise thereto occurred within the Court's geographical bounds.

7.     Venue is properly laid in the Western District of Michigan's Southern Division pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

8.     The Court may exercise Subject Matter Jurisdiction over the claims emanating from federal law pursuant to 28 USC § 1331.

9.     The Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

## GENERAL ALLEGATIONS

10.     Plaintiff applied to become a Corrections Officer for the Grand Traverse County Sheriff's Department in August of 2023. Lt. Jimmy Argyle conducted detailed background investigation, reviewing multiple documents and interviewing numerous people. He concluded that "Rachel is a determined go-getter, and all believe she will be great as a Corrections Officer."

11.    Plaintiff suffers from anxiety, depression, and panic episodes. During a flareup, these conditions may affect her ability to think clearly and function in social and public settings. However, her condition is normally well-managed and, absent extreme duress, flareups are rare. She was, and is, completely able to perform the essential functions of a corrections officer with or without any accommodation.

12.    Plaintiff began her service as a Corrections Officer for the County of Grand Traverse in September of 2023.

13.    Plaintiff immediately observed an environment rife with sexually offensive comments and behavior. In way of example, one of the other COs, Addison Kennedy, placed photographs of a woman's face on multiple hand sanitizer dispensers, which was designed to imply post-fellatio oral evacuation by the pictured woman when the dispensers would trigger. On another occasion another CO, Elijah Mleko, threw a peanut down in front of Plaintiff and then loudly commented "look! I busted a nut!" Plaintiff found this highly sexualized environment to be extremely offensive. And, she found that it distracted her from her duties and negatively impacted her performance.

14.    Early in her employment, Plaintiff took administrative leave. This generally caused ill-feeling towards her by the other corrections officers. Due to the animus towards her that this dispute generated, Deputy Kennedy proceeded to start and spread a rumor that she was, in his words, "fucking Sergeant Wood," one of the superiors at the jail. Deputy Mleko repeated and amplified this rumor.

15.    On July 2, 2024, Plaintiff formally complained about the ongoing sex-based harassment. She and her union delegate, Officer Shelly Shwettmann, met with LeeAnne Skiff, a representative from Defendant Grand Traverse County's Human Resources. During this

4

conversation, Plaintiff discussed the ongoing offensive environment, including Mleko's "bust a nut" comment, and the false rumor they had spread that she was "fucking Sergeant Wood." It is known that Officer Shelly also reported the offensive hand sanitizer fellatio photographs on another occasion that Plaintiff was personally not present for. HR Representative Skiff agreed that all of this was highly inappropriate and agreed to take action to curtail it.

16.     But that is not what happened. Deputy Mleko was advised of the complaint, but he was left in his position relative to Plaintiff at the jail and no other action was taken to curb his behavior. He continued to harass and intimidate Plaintiff. In way of example, there is a job assignment board that divides the tasks the COs perform during their shifts. One of the assignments is "200 block" which is the largest housing unit in the facility and is, generally, viewed as a higher-work, less desirable duty. The COs typically rotate who is on this assignment so that there is parity in the amount of work they are doing. After her complaint, Deputy Mleko began, on a day-to-day basis, moving Plaintiff's assignment so that she would be required to work 200 block. Deputy Mleko also continued to advance and amplify the rumor that Plaintiff is "fucking" Sergeant Wood.

17.     The harassment impacted Plaintiff's mental health significantly and resulted in significant emotional distress. This was made known to Defendants when, on July 23rd, she submitted documentation from her physician indicating that the harassment from the other officers was impacting her mental health and requested, as an accommodation, that she be reassigned away from the harassers.

18.     But, this is not what happened. Deputy Mleko continued to harass and intimidate Plaintiff. On or about July 24, he retaliated further by writing a lengthy screed about Plaintiff's supposed lack of performance which he transmitted to supervisors to affect her position.

5

19.    Plaintiff also observed that other Deputies retaliated against her by disclosing personal information to inmates. She learned this when Inmate Mazur commented to her, seemingly out of the blue, that "if I just got divorced, I would have lost a bunch of weight to." Plaintiff did not, and would never have disclosed her change in marital status or health information to the inmates because providing personal information of any kind to incarcerated criminals is a *significant* breach of professionalism and a serious safety concern. This information must have come from the other corrections officers. Their decision to do this was a flagrant act of additional retaliation.

20.    On July 25, 2024, the Defendants' Officers and command members colluded to create a particularly traumatic event for Plaintiff. That day, she had transported an inmate back to the jail from the hospital. Sgt. Wood approached her and told her, without notice, that she was "going to the doctor" for what was later identified as a fitness for duty evaluation. At the time, the reason for the visit was not disclosed; Plaintiff asked Wood "why?" and Wood answered that didn't know, but knew was being sent. Plaintiff Emailed Human Resources, Leeanne, who was also unaware. Plaintiff then consulted with Shelly from Union Board, who told her not to go due to lack of notice, describing it as an "intimidation tactic." Sergeant Wood, with Captain Barshok on phone, said she had to go. Plaintiff got in her car and started to drive to the appointment, but had massive panic attack. She then called Shelly from the Union Board against and was told to park car and go home for the day. She then contacted her physician, who excused her absence due to the panic attack this caused. This documentation was provided to Defendants shortly thereafter.

21.    On August 1, 2024, Plaintiff was publicly and overtly excluded from a work function by Defendants' command. On a regular basis, the Deputies will transport inmates from Traverse to Jackson County for housing. This is a desirable duty, because it often earns participating deputies overtime. Plaintiff had been on many such trips. She had qualified with a handgun three times.

There was no reason for her to be removed. But, on the day of, she arrived and asked if she was going and was told "no," she had been removed. She then asked Deputy Shelly, her Union representative, about the status and she was unaware of the reason for her removal. She then spoke to Sergeant Bates and he was immediately derogatory towards her inquiry as to why she had been excluded, saying "because Captain Barsheff said so!" in a mean tone. When talking to Sergeant Oliver she stated her belief that this was in retaliation for her earlier report of sexual harassment and he then got loud with her, and told her quite rudely to "put your stuff up and go away." Plaintiff then called the Undersheriff, explained situation. This triggered a panic attack. She went to urgent care and they gave medication to calm her, because she was so upset.

22.     On August 9, 2024, Plaintiff, through legal counsel, transmitted correspondence to the attention of the Grand Traverse County Sheriff Corrections Division and the Defendant Grand Traverse County Human Resources Department. This communication unequivocally detailed the foregoing information. It explained that Plaintiff was being exposed to an unlawful hostile work environment based upon her sex and retaliation for opposing same in violation of both Title VII and the Michigan Elliott Larsen Civil Rights Act. It demanded, among other things, that immediate action be taken to stop same.

23.     Instead of taking legally required corrective action, the Defendants retaliated further. On August 16, 2024 the Defendants called Plaintiff to a *Loudermill* hearing to discuss the July 25, 2024 and August 1, 2024 incidents. And, on August 21, 2024, she received a memorandum indicating that her probationary period had been extended by six months. The memo identified the July 25th and August 1st events described above as the reason for the extension.

24.     The sexually offensive behavior continued. On August 22, 2024 she was printing documents and discovered a page in the printer had a large penis drawn on it in whiteout. She

immediately took the penis picture to Deputy Shelly. Lieutenant Argyle witnessed this and took the picture. The Defense subsequently amended the *Loudermil* notice to include an absurd allegation that Plaintiff had created the penis picture.

25.    On August 23, 2024 Plaintiff filed a Grievance 08-23-24-FOPLC which asserted, in pertinent part, that "[o]n August 21, 2024, Captain Barsheff notified Plaintiff that her probation has been extended by six months" based upon the July 25th, 2024 and August 1, 2024 incidents. Her Union claimed this was done "arbitrarily and in violation of her due process rights in violation of" the CBA.

26.    On August 26, 2023 Plaintiff initiated Charge of Discrimination 647711 alleging discrimination based upon sex and disability discrimination.

27.    On or about August 29, 2024, Plaintiff waived her attendance at the *Loudermill* hearing.

28.    On August 30, 2024, The Defendants announced Plaintiff's termination based upon the July 25th, 2024 and August 1, 2024 incidents.


### Count I: Equal Protection, Sex Discrimination in Public Employment
### 42 USC § 1983
### *All Defendants*

29.    As a governmental employee, Plaintiff had a right to equal treatment by her governmental employer that was guaranteed by the 14th Amendment to the Constitution. *See Washington v. Davis*, 426 U.S. 229, 243 (1976). A state actor violates this provision when they discriminate against an individual in an employment setting based on sex. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003). Such discrimination may be challenged through 42 USC § 1983. *Id.* Such a claim mirrors that of a sex discrimination claim under Title VII, but does not require administrative exhaustion. *Id.*

30.    Plaintiff was exposed to an ongoing sexually offensive environment because of

      a.  Repeated sexualized comments and behavior by her coworkers, and

      b.  The false rumor that she was having sexual intercourse with another employee.

31.    Plaintiff found this behavior to be extremely offensive and objectionable. Any reasonable woman would.

32.    The behavior was motivated, at least in part, by hostility towards women in the workplace by those responsible.

33.    But for Plaintiff's status as a female, the male Officers would not have spread and amplified the rumor that she was having sex with another officer. Further, because Plaintiff is a female, the rumor that she was having sex with a male officer had a disproportionately negative effect on her. In our society, and in the workplace environment, men who have casual sex with women tend to be viewed favorably, while women who have casual sex with men are viewed as morally deficient. The officers in question understood this, and knew that spreading rumors about Plaintiff's sexual behavior would cast her in a negative light to others in that environment.

34.    The behavior was known to the Defendants by reason of Plaintiff's report of same.

35.    The Defendants failed and refused to take appropriate, effective action to remedy and end same. The behavior continued even after Plaintiff reported same and sought its end.

36.    Plaintiff's performance of work duties were significantly impacted by reason of the sexually offensive behavior discussed herein. It directly impacted the attitudes, treatment, and respect of other coworkers while attempting to perform her duties. It caused her daily emotional distress which impacted her ability to perform.

37.    Plaintiff opposed the ongoing sexual harassment by, as detailed herein, repeatedly reporting same to management. Plaintiff was subjected to ongoing coworker harassment by

reason of her complaint. This was made known to the Defendants' management by reason of Plaintiff's complaints and correspondence from counsel. The Defendants allowed it to continue. Further, the Defendants proceeded to terminate Plaintiff in direct response to reporting and opposing the negative, ongoing harassment. But for her status as a female, none of this would have occurred.

38.    In *Monell v. New York City Dept. of Social Services,* 436 US 658, 691 (1978) the Supreme Court concluded that municipal liability under 42 USC § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature." In *Pembauer v. City of Cincinnati*, 475 US 469 (1986) the Supreme Court abrogated *Monell* by holding that when an "ultimate decision maker" in a municipal organization is involved in the deprivation, or when that "action is directed by those who establish government policy" the municipality will be liable for the actions. *Pembauer,* in fact, held that a municipal organization could be held vicariously liable because a Sheriff was personally involved in the unconstitutional acts complained of.

39.    Defendant SHEA, as the Sheriff for Defendant GRAND TRAVERSE COUNTY, was the "ultimate decision maker" with respect to the application of employment policies to corrections officers. He was the ultimate decisionmaker as to the outcome of Plaintiff's complaints of discrimination and the response thereto. And, he was the ultimate decisionmaker as to the decision to terminate Plaintiff's employment in retaliation for her complaints. Therefore, Defendant GRAND TRAVERSE COUNTY is vicariously liable for the individual acts he took in violation of Plaintiff's First Amendment Rights, pursuant to 42 U.S.C. § 1983.

40.    Plaintiff suffered ongoing anger, outrage, stress, and humiliation as a result of the disproportionate treatment between male and female deputies by the Defendants.

41.     Plaintiff's regular work for the Grand Traverse County Sheriff was rendered intolerable by the ongoing mistreatment, such that she was forced to resign and seek alternate employment.

42.     Plaintiff suffered, and continues to suffer, lost wages and compensation as a result of the termination from her employment.

43.     Further, Plaintiffs efforts to secure alternative employment in law enforcement have been impacted by reason of the termination and the circumstances behind same. At least one employer has told her that she is unsuitable for hire by reason of the outcome of her interactions with Defendant SHEA.

44.     Plaintiff has suffered, and will continue to suffer, attorney's fees and costs from the opposition of this violation of her rights.

### Count II: Sex Discrimination and Retaliation
### Elliott Larsen Civil Rights Act
### *All Defendants*

45.     Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") provides, in pertinent part, that "an employer shall not … [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex . . ." MCL 37.2202.  The ELCRA is largely coextensive with Title VII, with the exception that the statute's definition of "employer," unlike its federal counterparts, is broad enough to allow for suit against discriminating managers in their capacity as individuals. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005).

46.     Defendants GRAND TRAVERSE COUNTY and Defendant MICHAEL SHEA, as the Sheriff of Grand Traverse County, are Plaintiff's employers as defined by the statute.

47.     Defendant MICHAEL SHEA, as an individual, is also Plaintiff's "employer" as defined by the statute.

11

48.    The Defendant GRAND TRAVERSE COUNTY and MICHAEL SHEA are both "persons" as considered by the Statute.

49.    Defendants violated MCL 37.2202(1)(a), which prohibits an employer from "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of…sex[.]"

50.    Defendants violated MCL 37.2701(a) which provides that "[t]wo or more persons shall not conspire to, or a person shall not, [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act."

51.    Because ELCRA claims are co-extensive to Title VII, which in turn mirrors the legal framework and standards applicable to an equal protection claim for sex discrimination under 42 USC 1983, Plaintiff will incorporate the factual statements and claims for damages contained in Count I – Sex Discrimination in Violation of the Equal Protection Clause, as if fully restated herein, in support of liability under this theory.

## Count III: Disability Discrimination and Retaliation
### Michigan's Persons with Disabilities Civil Rights Act MCL 37.1101 *et seq.*
### *All Defendants*

52.    Defendants GRAND TRAVERSE COUNTY and Defendant MICHAEL SHEA, as the Sheriff of Grand Traverse County, are Plaintiff's employers as defined by the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq* (hereinafter "PWDCRA").

53.    Defendant MICHAEL SHEA, as an individual, is also Plaintiff's "employer" as defined by the PWDCRA.

54.     The Defendant GRAND TRAVERSE COUNTY and MICHAEL SHEA are both "persons" as considered by the PWDCRA.

55.     The PWDCRA requires an employer to provide reasonable accommodation for an employee's disabling condition. This includes a right to take leaves of absence to care for symptoms of such a condition.

56.     The PWDCRA prohibits an employer from discriminating against an employee by reason of a disability.

57.     The PWDCRA prohibits any person from retaliating against an individual because they have sought to enforce rights guarantee by the Statute.

58.     Plaintiff engaged in activity protected by the PWDCRA when she

      a.  Submitted documentation from her physician on July 23, 2024, and requested reassignment away from her harassers, due to the impact it was having on her disabling condition,

      b.  Requested a leave of absence on July 25, 2024 because she was having a panic attack, related to her disabling condition.

59.     The Defendants violated the PWDCRA when they imposed discipline upon her, including the *Loudermill* process and then termination, related to her exercise of this leave of absence.

60.     The Defendants have violated the PWDCRA when they retaliated against her for opposing their violation of the PWDCRA by terminating her employment, and then interfering with subsequent employment opportunities.

61.     The causal connection between her protected activity and the termination is established because the July 25th incident is *explicitly referred to* in the *Loudermill* notice and then again in the termination documentation.

62.     Plaintiff will incorporate the factual statements and claims for damages contained in the previous counts as if fully stated herein.

**Count IV: First Amendment Retaliation**
**42 USC § 1983**
***All Defendants***

63.     Plaintiff engaged in the following activities protected by the First Amendment of the United States Constitution, all of which are protected by her right to petition for redress of grievances:

> a.  Complaining about the ongoing sexually offensive environment described herein on July 2, 2024.
>
> b.  Submitting documentation from her physician, and request transfer away from her harassers, on July 23, 2024.
>
> c.  Making a request for a medical-related leave of absence on July 25, 2024.
>
> d.  Submitting, through counsel, a formal demand letter to cease further unlawful behavior on August 9, 2024.
>
> e.  Reporting the graphic picture she found in the printer on August 22, 2023.
>
> f.  Filing a grievance with her union on August 23, 2024.
>
> g.  Filing a formal complaint with the Michigan Department of Civil Rights on Auust 26, 2024.

64.     Defendant SHEA was aware of each of the foregoing actions on Plaintiff's part.

14

65.    The Defendant GRAND TRAVERSE COUNTY was, by reason of Plaintiff's various communications with its agents in the Human Resources Department, likewise aware of the protected activity described above.

66.    Defendants retaliated against Plaintiff for her protected activity by:

      a.  Knowingly allowing her to be subjected to ongoing co-worker harassment in response to her protected activities,

      b.  Subjecting her to unreasonable intimidation in the events on July 25, 2024 described above.

      c.  Excluding her from work functions, including the August 1, 2024 incident described above.

      d.  Subjecting her to a *Loudermill* hearing, which was noticed on or about August 16, 2024.

      e.  Terminating her employment on August 30, 2024.

67.    Each of the aforesaid actions could deter a person of ordinary firmness from engaging in the actions that Plaintiff did.

68.    There is a causal connection between Plaintiff's protected conduct identified herein and the adverse actions Defendants took against her. In way of example and not limitation,

      a.  There is a close temporal proximity between the protected conduct and the events described herein.

      b.  The *Loudermill* notice specifically reference the July 25, 2024 incident, the August 1, 2024 incident, supposedly "untrue" allegations Plaintiff made during same, and the August 22, 2024 complaint regarding the picture as potential bases for discipline.

      c.  The termination notice specifically referred to the July 25, 2024 and August 1, 2024 incidents as reasons for the termination.

69.    Plaintiff will incorporate the factual statements and claims for damages contained in the previous counts as if fully stated herein.

70.    Due to the flagrant, willful, and wanton violation of Plaintiff's rights she is also entitled to an award of punitive and exemplary damages pursuant to applicable law.

**WHEREFORE** Plaintiff demands the following relief:

1. NOMINAL DAMAGES by reason of the violation of her rights,

2. COMPENSATORY DAMAGES in an amount determine to be appropriate by the jury,

3. EXEMPLARY DAMAGES in an amount determined appropriate by the jury,

4. PUNITIVE DAMAGES in an amount determine appropriate by the jury,

5. ATTORNEYS FEES and COSTS, pursuant to statute,

6. Pre and post judgment interest,

7. Such other relief as this Court may deem appropriate in law or equity.

## PLAINTIFF DEMANDS A JURY TRIAL

Respectfully Submitted,

Dated: 11/25/2024

_____/s/ Collin H. Nyeholt_____
Collin H. Nyeholt (P74132)
Attorney for the Plaintiff

## VERIFICATION OF COMPLAINT

<u>Rachel Bender,</u> being sworn, says:

I verify, under penalty of perjury, that I have read and made this Complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

/s/ _____

     Rachel Bender

**Notary Seal**

Subscribed and sworn to by _Rachel Bender_
before me the __25__, day of _November_, 2024.
Signature _____
Printed Name _Allie Baker_
Notary Public in: _Manistee; Acting in Benzie_
My Commission Expires _5/23/2020_

17